## THE ESTATE OF McREYNOLDS.

1. **Estates of Decedents:** ALLOWANCE TO WIDOW: MONEY INSTALLMENTS. Under section 2375 of the Code, the court may, in a proper case, direct the executor to pay to the widow of the decedent, for the support of herself and children, a sum of money in quarterly installments, instead of setting apart for their support specific property, and it is no valid objection to such order that the executor has not at the time enough of money in his hands to pay the first installment; nor is such order objectionable as being in violation of section 2377 of the Code, which contemplates that an allowance of that kind may be reduced upon a proper showing.

2. ———: ———: ANTE-NUPTIAL CONTRACT. Whether an ante-nuptial contract, entered into by a woman with the design of barring her right to an allowance out of her husband's property, can be set up against her, *quære;* but where, as in this case, the contract expressly provided that it should not apply to any property acquired after the marriage, and the parties had been married twenty years, the husband having been a large farmer, and having left a large amount of personal property such as accumulates upon a farm, *held* that out of this property the widow was entitled to an allowance.

*Appeal from Wapello Circuit Court.*

WEDNESDAY, OCTOBER 3.

IN July, 1882, Solomon McReynolds died, testate, and M.

L. McReynolds and Martha W. Tracy were appointed executors of his will. His widow, Eliza McReynolds, made an application for an order of allowance for support, and the court granted the order. The executors appeal.

*Stiles & Beaman*, and *W. W. Cory*, for appellant.

*McNett & Tisdale*, and *H. B. Hendershott*, for appellee.

ADAMS, J.—I. The order made was that the executors pay Eliza McReynolds the sum of $360, and pay the same quarterly in advance. The executors object to the order upon the alleged ground that it does not follow the statute under which alone it could have been made. Section 2375 of the Code is in these words:

1. ESTATES of decedents: allowance to widow: money installments.

"The court shall, if necessary, set off to the widow, and children under fifteen years of age, of the deceased, sufficient of his property, of such kind as it shall deem appropriate, to support them for twelve months from the time of his death."

. What the court did in this case was to charge the estate with payments. The executors insist that this was not a setting off of property within the meaning of the statute, and especially as it appeared in evidence that the money in the executor's hands at the time was not sufficient even to pay the first installment. To this we have to say that it is true that the primary idea of the statute seems to be that specific property is to be set off, as provisions and other things that might be used directly in the support of the family. The court doubtless, in the first instance, should direct its mind to the consideration as to whether this could not properly be done. But it is easy to suppose a case where the property that could be turned over to the widow, to be used by her directly in the support of the family, would be insufficient. In such case, we do not think that the court would be justified in refusing to make an allowance. The family must be supported in some way, and should not be left to depend upon the kind of property which the decedent happened to have on

hand at the time he died. Now, if property is to be converted into money for the support of the family, we see no reason why the executor may not be charged with the duty of making the conversion. It might be impossible to turn over, to be converted by the widow, the precise quantity necessary. In our opinion, the court did not err in charging the executors with making money payments, and that, too, regardless of the question as to whether they had the requisite amount of money in their hands at that time.

Another objection urged by the executors to the allowance is that it was an absolute grant, whereas, they insist that, though made in money, it should have been as of so much set aside and left in the executor's hands, to be paid to the widow as might be necessary.

The statute contemplates that the allowance may, upon a proper application and showing by parties in interest, be reduced. Code, § 2377. Ordinarily, probably, the allowance should not be ordered to be paid in advance. A reasonable opportunity should be left to modify the order by reducing the allowance, in case it should be found proper to do so. But we do not think that this rule was violated in the case at bar. The allowance was moderate, and the payments were quarterly payments, and more than three months had already expired from the time of the testator's death.

II. The executors insist, however, that, under the circumstances of this case, the court should not have made any order of allowance at all. They base their position upon certain evidence introduced to show that the widow, prior to her marriage with the testator, entered into a written contract with him, whereby she precluded herself from making claim to an allowance.

2. ——: ——: ante-nuptial contract.

Whether an ante-nuptial contract entered into by a woman with the design of barring her right to an allowance can be set up against her, is a question discussed by counsel, but we do not feel called upon to determine it. The ante-nuptial contract relied upon by the executors expressly provided that it

should not affect any property which might be acquired after the marriage. Now, the evidence shows that the marriage took place in 1862, about twenty years before the death of the testator. During the time that the marriage subsisted, the testator was a large farmer, and when he died he left a large amount of property, real and personal, a very large portion of the latter of which consisted of farm products, machinery, and stock, which, without any question, was acquired subsequent to the marriage. It is insisted, it is true, by the executors, that it was acquired by the conversion of property owned previously. But it was largely the product of the farm, and the joint labor of the testator and his wife, and was, we think, acquired subsequently to the marriage, within the meaning of the contract.

We think that there was no error in making the allowance.

AFFIRMED.